**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARIS C., | ) Case No. CV 19-0924-GW (JPR) |
| Plaintiff, | ) |
| v. | ) ORDER ACCEPTING FINDINGS AND ) RECOMMENDATIONS OF U.S. ) MAGISTRATE JUDGE |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint, motions for judgment on the pleadings, Administrative Record, and all other records on file as well as the Report and Recommendation of U.S. Magistrate Judge. On February 19, 2020, Plaintiff filed Objections to the R. & R., in which he mostly simply repeats arguments from his Motion for Judgment on the Pleadings and Opposition to Defendant's Motion for Judgment on the Pleadings.

For instance, Plaintiff reiterates that the ALJ erred in giving great weight to the opinion of consulting examiner Dr. John Sedgh, who was subsequently removed from the panel of approved examining physicians. (See Objs. at 1-3.) He claims

1

that Sedgh did not conduct the tests he said he did and submitted a "false" x-ray of Plaintiff's spine. (Id. at 1, 3.) As the Magistrate Judge found, however, Plaintiff has not shown that Sedgh actually made false statements or that the x-ray was fabricated. (R. & R. at 15-16.) Indeed, she correctly recognized that he was removed from the panel for problems with tardiness, rushing, scheduling, and security — not fabricating statements or documents — and that those issues were related "only tangentially" to the reliability of his medical opinion. (Id. at 14.) And even if Plaintiff is correct that the x-ray was a "fake," he concedes that it showed greater impairment than other doctors had diagnosed. (See Objs. at 3-4 (arguing that x-ray showed "[m]oderately advanced discogenic disease" even though "[t]here is nothing wrong with [his] lower back").) Thus, any error by the ALJ in considering the x-ray was harmless, as the Magistrate Judge recognized. (R. & R. at 16.)[1]

Further, Plaintiff still has not explained what the significance of Sedgh's purported misstatements were or what tests he failed to perform, much less whether they mattered to the ALJ's finding. (See id. at 14.) He claims that Sedgh's opinion was "in total contradiction with four treating physician[s] and . . . [x]-rays made in the last fifteen years."

---

[1] To prove that the x-ray was "fake," Plaintiff attaches a February 13, 2020 letter from orthopedic surgeon P. Douglas Kiester, stating that he has a "normal x-ray of the low back (lumbar spine) for a person of his age." (Objs., Ex.) That letter is neither part of the Administrative Record nor referenced in Plaintiff's motion or opposition, however, and the Court does not consider it. In any event, it does not prove that the x-ray was fake and reflects that even if it was it actually overstated Plaintiff's impairments.

(Objs. at 3.)  It isn't clear what opinions or x-rays Plaintiff is referring to or how they undermine Sedgh's assessment.  To the extent he is alluding to orthopedic surgeon Ranjan Gutpa's 2005 arthogram and 2016 x-ray of his shoulder, which showed a "Hill-Sachs deformity" and "degenerative changes of the acromioclaviar joint" (see Pl.'s Mot. J. Pleadings at 8), the Magistrate Judge correctly explained how those findings were not inconsistent with Sedgh's assessment that an x-ray of Plaintiff's shoulder — an x-ray he does not dispute was taken — showed "degenerative arthritic changes."  (R. & R. at 16.)

   Notably, Plaintiff concedes that "pain," including shoulder pain, is not the reason he can't work.  (Objs. at 5.)  Rather, he says, the "real problem" is the "numbness and tingling" he feels in his arms when "seated for a long period of time."  (Id.)  But as the Magistrate Judge found, the first time Plaintiff raised that issue in many years was several weeks after he filed his DIB application, when he complained to a doctor about his right arm.  (R. & R. at 17.)  Indeed, he did not report any pain, injury, or other problem concerning his shoulders or arms in nine doctor visits between 2013 and 2015, as the Magistrate Judge noted.  (Id. (citing AR 298-305, 322-24, 326-28, 337-39, 344-46, 351-56, 361-63).)  Further, that during that time he lifted weights at the gym suggests a high level of functioning in his upper extremities.  (See id. (citing AR 302).)

   Plaintiff correctly points out that Dr. Marco Angulo, the doctor he first raised the numbness and tingling issue with in 2015, opined in February 2016 that Plaintiff had to "walk around and not stay sitting for a prolonged period of time."  (Objs. at

3

6 (citing AR 422).) But the Magistrate Judge correctly determined that any error by the ALJ in not assigning that opinion any particular weight was harmless given that Angulo did not start seeing Plaintiff until just a few months before his date last insured and several months after that noted that his condition "ha[d] been progressing recently." (R. & R. at 18 n.17 (citing AR 422).) Further, it appears that Angulo's assessment simply restated Plaintiff's subjective complaints. As the Magistrate Judge found, the ALJ discounted those subjective complaints, a finding Plaintiff has not challenged, and contemporaneous treatment records do not corroborate the sensations Plaintiff reported. (See id. at 19.) He claims orthopedic surgeon Kiester's records "back[]" Angulo's assessments (see Objs. at 6 (citing AR 423, 431)), but the cited records are silent on whether Plaintiff can sit for a prolonged period because of his upper-extremity impairments. Indeed, in 2005 Kiester noted Plaintiff's complaints of tingling in his arms but concluded that his "only significant complaint" was "tenderness at the base of his neck." (AR 423.) And although he noted in 2018, more than two years after the date last insured, that Plaintiff "report[ed] some tingling [in] both arms," he ascribed no functional limitations from that impairment, finding only "some weaknesses and loss of fine motor with the use of his hands," which the RFC accounts for, as the Magistrate Judge pointed out, by adding limitations for "frequent handling and fingering due to his continued right upper extremity instability." (R. & R. at 17 (citing AR 31).)

      The Magistrate Judge also correctly recognized that

4

Plaintiff's reported functional limitations were inconsistent with his activities of daily living. (Id. at 19-20.) She did not point to Plaintiff performing those activities as proof that his impairments did not exist. (See Objs. at 5.) Rather, she drew the permissible inference that because he was able to perform those activities his impairments were not as severe as he reported. The same inference arises from Plaintiff's refusal to seek medical help for the numbness in his arms. Although he explains that he did not go to the doctor for years because he "kn[e]w" they would just tell him to have surgery (id.), the fact that he didn't suggests that his symptoms did not prevent him from working.

Having reviewed de novo those portions of the R. & R. to which Plaintiff objects, the Court accepts the findings and recommendations of the Magistrate Judge. IT THEREFORE IS ORDERED that judgment be entered affirming the Commissioner's decision and dismissing this action with prejudice.

DATED: November 18, 2020  _____
GEORGE H. WU
U.S. DISTRICT JUDGE